UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

TYRONE JACKSON,                                        Case No. 13 CV 3589
                              Plaintiff,               (SLT) (SMG)

          -against-                            **AMENDED COMPLAINT**

THE CITY OF NEW YORK, SERGEANT                  JURY DEMAND
DAVID JOHN [SHIELD # 1956], P.O.
MICHAEL SMITH [SHIELD # 20196],
P. O. ANTHONY FERNANDEZ [SHIELD #
25542], SERGEANT MARY HUMBURG
[SHIELD # 3709], and P.O. SULLY
CEBALLOS [SHIELD # 25135],
                              Defendants.
-----------------------------------------------------------------X

Plaintiff, TYRONE JACKSON, by his attorney, The Law Offices of UGO UZOH, P.C.,
complaining of the defendants herein, The City of New York, Sergeant David John
[Shield # 1956], P.O. Michael Smith [Shield # 20196], P. O. Anthony Fernandez [Shield
# 25542], Sergeant Mary Humburg [Shield # 3709] and P.O. Sully Ceballos [Shield #
25135] (collectively, "defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

1.        This is an action at law to redress the deprivation of rights secured to the
          plaintiff under color of statute, ordinance, regulation, custom, and/or to
          redress the deprivation of rights, privileges, and immunities secured to the
          plaintiff by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth
          Amendments to the Constitution of the United States, and by Title 42 U.S.C.
          §1983 [and § 1985], [and arising under the law and statutes of the City and
          State of New York].

## JURISDICTION

2.        The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28
          U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the First,
          Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States
          Constitution.

3.          As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

COMPLIANCE WITH N.Y. GEN. MUN. LAW REQUIREMENTS

4.          Plaintiff timely made and served a notice of claim upon the defendants in compliance with N.Y. Gen. Mun. Law § 50-e.

5.          At least thirty days have elapsed since the service of aforesaid notice of claim and adjustment or payment thereof has been neglected or refused.

6.          This action is commenced within one year and ninety days after the happening of the event(s) upon which the claim(s) is based.

THE PARTIES

7.          Plaintiff is and was at all times material herein a resident of the United States and the State of New York.

8.          At all relevant times, defendants Sergeant David John [Shield # 1956], P.O. Michael Smith [Shield # 20196], P. O. Anthony Fernandez [Shield # 25542], Sergeant Mary Humburg [Shield # 3709] and P.O. Sully Ceballos [Shield # 25135] (hereinafter "defendant officers") were, upon information and belief, and still are, agents and/or officers employed by defendant City of New York.

9.          At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were/are the servants, agents, and employees of their co-defendant, the City of New York, such that their acts are imputed to the City of New York.

10.         At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers, and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or at the direction of the defendant City of New York.

11.     Plaintiff is suing the defendant officers in their individual and official capacities.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.     On or about May 4, 2012, at approximately 12:30 p.m., defendant officers, acting in concert, arrested plaintiff without cause at or close to the corner of Broadway and Ellery Street, Brooklyn, New York, and charged plaintiff with PL 240.20(1) 'Disorderly Conduct'. In addition, on or about January 13, 2013, at approximately 12:40 p.m., defendant officers, acting in concert, arrested plaintiff at or within the vicinity of 164th Street, at its intersection with Jamaica Avenue, Queens, New York, and charged plaintiff with PL 155.30 'Grand larceny in the fourth degree'.

13.     Plaintiff, however, did not steal any property, was not engaged in any fighting, fraudulent, violent, tumultuous or threatening behavior, and did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

14.     Prior to his initial arrest on or about May 4, 2012, plaintiff was on his way home when defendant officers suddenly approached the plaintiff and arrested him.

15.     That the plaintiff was then subjected to an illegal and warrantless search by defendant officers.

16.     Even though defendant officers did not find anything illegal on the plaintiff, defendant officers nonetheless arrested the innocent plaintiff and tightly handcuffed the plaintiff with his hands placed behind his back.

17.     When the plaintiff inquired as to the reason for his arrest, defendant officers threatened to smack the plaintiff and stated that they were going to arrest the plaintiff on each and every occasion that they encounter him on the street.

18.     Eventually, plaintiff was transported in a police vehicle to the NYPD-83rd Precinct.

19.     While at the precinct, plaintiff was interrogated by defendant officers who kept asking the plaintiff to give them information about drugs and guns in his neighborhood and to give them information concerning certain individuals.

20.      The defendant officers made it clear that they would not release the plaintiff unless and until he answered their questions.

21.      At some point, the plaintiff was placed in a room that appeared to be divided with a witness screen with defendant officers asking the plaintiff whether he recognized the individual on the other side of the room who, apparently, was shielded from view by the witness screen.

22.      As the plaintiff did not, and does not, have any drugs and/or guns nor have any of the information requested by defendant officers, the plaintiff promptly advised defendant officers accordingly.

23.      Eventually, after detaining the plaintiff for several hours, defendant officers released the plaintiff from his unlawful detention and directed the plaintiff to appear in court on or about August 1, 2012, to defend the false charge(s) levied against him.

24.      On or about August 1, 2012, the plaintiff appeared in court as directed to defend the false charge(s) levied against him by defendant officers.

25.      Following plaintiff's appearance in court, the false charge(s) levied against the plaintiff was summarily dismissed on or about August 1, 2012.

26.      Prior to his second arrest on or about January 13, 2013, plaintiff was at or within the vicinity of the aforementioned 164th Street, Queens, New York, location waiting to meet with his niece, Lanelle Witchard, when defendant officers suddenly approached the plaintiff and arrested him.

27.      Plaintiff had planned to visit his niece's dance studio which is located within the area, and his niece had arranged to meet with him at the location to take the plaintiff to her studio.

28.      Following the said August 18, 2012 arrest, defendant officers tightly handcuffed plaintiff with his hands placed behind his back.

29.      The plaintiff was then subjected to an illegal search, with defendant officers pushing and grabbing the plaintiff.

30.      Even though defendant officers did not find anything illegal from their search, defendant officers nonetheless forcibly pushed plaintiff into their police vehicle.

31.     Eventually, plaintiff was transported to the NYPD-103rd Precinct.

32.     After detaining the plaintiff for a lengthy period of time at the NYPD-103rd Precinct, plaintiff was transported to the Central Booking to await arraignment.

33.     While plaintiff was awaiting arraignment, defendant officers met with prosecutors employed by the Queens County District Attorney's Office.

34.     During this meeting, defendant officers falsely stated to the prosecutors that the plaintiff stole certain property.

35.     That the prosecutors conducted an independent investigation and concluded that there was no evidence of any crime committed by the plaintiff.

36.     As a result, the prosecutors declined to prosecute the plaintiff.

37.     Eventually, after detaining the plaintiff for approximately forty eight (48) hours, defendant officers summarily released plaintiff from his unlawful detention.

38.     That each and every officer who responded to and/or was present at the location of the arrest and/or at the precinct or facility knew and was fully aware that the plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

39.     Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

40.     As a result of the aforesaid actions by the defendants, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, loss of rights to familial association, wages and financial losses, pain and damage, and damage to reputation.

FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

41.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 40 of this complaint as though fully set forth herein.

42.     The conduct of defendant officers, as described herein, amounted to false arrest, excessive use of force, malicious abuse of process, racial profiling,

selective enforcement, failure to intervene, illegal and unreasonable stop, frisk, search and seizure, pattern of harassment, loss of rights to familial association, first amendment retaliation, abuse of authority, conspiracy, discrimination, fabrication of evidence, denial of equal protection of the laws, denial of right to a fair trial, denial of due process rights and malicious prosecution.

43.     Such conduct violated plaintiff's rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

44.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City of New York

45.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 44 of this complaint as though fully set forth herein.

46.     Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

47.     Additionally, defendant City of New York, acting through District Attorney Charles J. Hynes and the Office of the District Attorney of the County of Kings and through District Attorney Richard A. Brown and the Office of the District Attorney of the Queens County, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and

discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and informants, assessing the credibility of witnesses and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and/or obligation of candor toward the court.

48.     Defendant City of New York, acting through aforesaid NYPD and District Attorneys, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they were involved in some crime or offense.

49.     Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

50.     For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and that it had settled at least one of the lawsuits brought against it concerning racial profiling.

51.     In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New York, acting through the NYPD, engages in illegal and unreasonable stop, frisk, search and seizure. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

52.     Additionally, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

53.     Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for

cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with various crimes, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

54.     In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant evidence on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting evidence on innocent persons as "attaching bodies" to the evidence. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

55.     Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach . . . ."

56.     Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

57.     Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

58.     That Detective Arbeeny was subsequently convicted of planting evidence on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

59.     That the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes . . . ." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

60.     Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

61.     In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman, Sergeant Bobby Hadid and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

62.     In addition to the named individual defendants, several officers of the NYPD assigned to the NYPD-83rd and NYPD 103rd Precincts -- as the named

individual defendants -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

63.     That most of the arrests and charges made by officers assigned to the NYPD-83rd and NYPD 103rd Precincts are usually voided and/or dismissed by prosecutors for lack of evidence.

64.     That defendant City of New York has settled numerous lawsuits brought in this district against several officers assigned to the NYPD-83rd and NYPD 103rd Precincts in connection with the unlawful arrests and charges described herein. *See*, *e.g.*, *Timothy Hampton v. City of New York* (11 CV 2084); *Iveliese Niola v. City of New York* (10 CV 2255); *Stephanie Fulmore v. City of New York* (09 CV 3119).

65.     That defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiff's injuries as described herein.

66.     The actions of defendants, acting under color of State law, deprived plaintiff of his due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in his person and property, to be free from abuse of process, the excessive use of force and the right to due process.

67.     By these actions, defendants have deprived plaintiff of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

THIRD CAUSE OF ACTION: 42 U.S.C. § 1985

68.　　　By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 67 of this complaint as though fully set forth herein.

69.　　　In an effort to find fault to use against the plaintiff, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to United States Constitution, because of his race, ancestry and/or ethnicity, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

70.　　　In light of the foregoing therefore, defendant officers engaged in a conspiracy designed to deprive plaintiff of his constitutional and federal rights in violation of 42 U.S.C. § 1985.

71.　　　As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore stated.

FOURTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12

72.　　　By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 71 of this complaint as though fully set forth herein.

73.　　　By reason of the foregoing, and by arresting, detaining and imprisoning plaintiff without probable cause or reasonable suspicion, and harassing and assaulting him and depriving him of due process and equal protection of laws, defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

74.　　　In addition, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiff of his constitutional rights secured

by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

75.   Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

76.   Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiff's state constitutional rights.

FIFTH CAUSE OF ACTION: ASSAULT AND BATTERY

77.   By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 76 of this complaint as though fully set forth herein.

78.   The conduct of defendant officers, as described herein, amounted to assault and battery.

79.   By reason of and as a consequence of the assault, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, and damage to reputation.

80.   Upon information and belief, defendant City of New York had sufficiently specific knowledge or notice of defendant officers' propensity for acts complained of herein and that their acts could reasonably have been anticipated. However, defendant City of New York failed to take any appropriate actions to assure plaintiff's safety and security and failed to protect and/or safeguard plaintiff's interests.

81.   That defendant City of New York's failure to assure plaintiff's safety and security was a proximate cause of plaintiff's injuries.

SIXTH CAUSE OF ACTION: OTHER NEW YORK TORTS

82.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 81 of this complaint as though fully set forth herein.

83.     The conduct of the defendants, as described herein, amounted to false arrest/imprisonment, illegal and unreasonable stop, frisk, search and seizure, negligence, defamation, conspiracy, special injury, abuse of process, harassment, abuse of power, trespass, and malicious prosecution.

84.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SEVENTH CAUSE OF ACTION: NEGLIGENT & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

85.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 84 of this complaint as though fully set forth herein.

86.     The defendants engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to plaintiff.

87.     Plaintiff's emotional distress has damaged his personal and professional life because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the assault, detention and imprisonment by defendants.

88.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

EIGHTH CAUSE OF ACTION: NEGLIGENT HIRING AND RETENTION OF EMPLOYMENT SERVICES

89.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 88 of this complaint as though fully set forth herein.

90.     Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action,

owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

91.     Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that an injury to plaintiff or to those in a like situation would probably result from such conduct described herein.

92.     Upon information and belief, defendant City of New York, knew or should have known through the exercise of reasonable diligence that defendant officers were not prudent and were potentially dangerous.

93.     Upon information and belief, defendant City of New York's negligence in hiring and retaining the defendants proximately caused plaintiff's injuries.

94.     Upon information and belief, because of defendant City of New York's negligent hiring and retention of defendant officers, plaintiff incurred and sustained significant and lasting injuries.

WHEREFORE, plaintiff respectfully prays judgment as follows:

a.     For compensatory damages against all defendants in an amount to be proven at trial;

b.     For exemplary and punitive damages against all defendants in an amount to be proven at trial;

c.     For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

d.     For such other and further relief as the court deems proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
         December 4, 2013

UGO UZOH, P.C.

/s/

By:    Ugochukwu Uzoh (UU-9076)
       Attorney for the Plaintiff
       304 Livingston Street, Suite 2R
       Brooklyn, NY 11217
       Tel. No: (718) 874-6045
       Fax No: (718) 576-2685
       Email: u.ugochukwu@yahoo.com